351 So.2d 1284 (1977)
I. I. ROSEN
v.
Walter REED et al.
No. 11540.
Court of Appeal of Louisiana, First Circuit.
October 17, 1977.
Concurring Opinion November 21, 1977.
Rehearing Denied November 21, 1977.
*1285 Jack Peebles, New Orleans, for I. I. Rosen, plaintiff appellant.
Ben W. Lightfoot, Baton Rouge, for Walter Reed, defendant appellee.
Before LANDRY, SARTAIN and ELLIS, JJ.
ELLIS, Judge.
This is an appeal by plaintiff I. I. Rosen from a judgment dismissing his suit for damages for defamation against Walter Reed and Interstate Fire & Casualty Company, his insurer.
On November 20, 1973, Mr. Reed, a deputy sheriff and detective in the narcotics division of the Tangipahoa Parish Sheriff's Office, was guest speaker at a meeting of the Amite Rotary Club. There were about 30 people present. Mr. Reed's subject was "Narcotics in Tangipahoa Parish".
The membership of the Amite Rotary Club, according to the testimony, consists of "all of the old successful business men in the area" a number of whom "had children in that age bracket who were highly susceptible of (narcotics) use, principally of marijuana."
At the close of Mr. Reed's presentation, he was asked how narcotics could be controlled in the area. According to plaintiff's only witness, he replied that "the only way you can control it is to stop the distribution of it and Dr. I. I. Rosen is one of the principal distributors of hard narcotics in this area and you would have to get rid of him."
Mr. Reed testified that, in response to question asked him at the meeting, he stated that he "felt that Dr. Rosen was one of the people that was responsible in a large part to the drug problem that we had." He further testified that he tried to make it clear that Dr. Rosen was not involved in any drugs other than "pills, amphetamines and barbiturates and so forth." He further stated that he said that Dr. Rosen was selling "drugs which could possibly be legal if they were administered properly, but the fact (was) that they were being administered improperly and illegally."
He testified that what he said about Dr. Rosen was true, and that his belief was based on information gained while a narcotics officer in New Orleans and, later, as a deputy sheriff in Tangipahoa Parish. He further stated that he bore no malice or ill will toward Dr. Rosen, with whom he was not acquainted at the time he spoke to the Rotary Club. In explaining why he made the statement, Mr. Reed said:
"We had a serious problem here, and the people that were there were responsible business people. They were the leaders of the community and I thought that they had a lot of influence in the community and I thought by saying these things that, perhaps, some public good could come of it."
In Ward v. Sears, Roebuck & Co., 339 So.2d 1255 (La.App. 1st Cir. 1976), we said:
"An action for libel and slander falls within the ambit of LSA-C.C. Article 2315, our general tort law. Our jurisprudence establishes that in an action of this nature proof of the following elements are necessary for recovery: (1) Defamatory words; (2) Publication, meaning communication to one other than the party defamed; (3) Falsity; (4) Malice, actual or implied; and (5) Resulting injury."
In the absence of some privilege, absolute or qualified, in favor of defendant, malice and injury will be implied if the defamatory remarks are found to be false. The burden of proving the truth of the defamatory statements falls on the defendant. Ford v. Jeane, 159 La. 1041, 106 So. 558 (1925); Comment, 28 La.Rev. 82 (1967). No serious effort was made to prove that the statements made by Mr. Reed about Dr. Rosen were true. It follows that, unless the defamatory remarks made by Mr. Reed are conditionally or qualifiedly privileged, Dr. Rosen is entitled to recover.
In Toomer v. Breaux, 146 So.2d 723 (La. App. 3rd Cir. 1962), the court said:

*1286 "In other more numerous instances, a publication enjoys a `qualified' or conditional privilege, applicable if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate."
It is also true that the defense of qualified privilege does not extend to a publication to the general public. Whittington v. McGraw-Hill, Inc., 294 So.2d 288 (La.App. 1st Cir. 1974).
Although we do not equate a publication to a civic organization, such as the Rotary Club, to be a publication to the general public, neither can we agree with the trial judge that such an organization has an interest or duty corresponding to that of a law enforcement official. As we said in Whittington v. McGraw-Hill, supra:
"The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty."
We find that no such necessity exists in this case, and that the natural interest of the general citizenry in good law enforcement is not such an interest as will give rise to the qualified privilege claimed by defendants in this case.
Dr. Rosen testified that, when he learned of the defamatory remarks, his blood pressure went up and he suffered from dizziness for about ten days thereafter. He stated he was unable to keep "total office hours" during that period. He said that he was all right thereafter, except for occasional dizzy spells, until July, 1974, when he was indicted and arrested. After that event, he was hospitalized at Ochsner Hospital for two and one-half weeks. He was once again suffering from dizziness and a paralysis of the right cheek. He was of the opinion that this difficulty was "closely related" to the defamation which took place in November, 1973. He testified that he had suffered financial loss of some $6,000.00 because of his 1974 illness, plus close to $600.00 in medical expenses.
He offered no evidence, documentary or otherwise, in support of the testimony detailed above, and could not show any specific financial loss resulting from the defamation.
Neither did he offer any evidence to show that his reputation in the community suffered as a result of the remarks made by Mr. Reed.
We find the evidence relative to the medical consequences of the defamation to be self serving and unconvincing, and do not believe that the special damages claimed, even if due, have been proven with the certainty required by law.
However, we find that Dr. Rosen is entitled to nominal damages of $1,500.00 for all injuries suffered as a result of the defamation.
The judgment appealed from is therefore reversed and set aside and there will be judgment herein in favor of plaintiff I. I. Rosen, and against defendants, Walter Reed and Interstate Fire & Casualty Company, in solido, in the sum of $1,500.00 together with legal interest from judicial demand until paid, and all costs of these proceedings.
REVERSED AND RENDERED.
LANDRY, Judge, concurring.
Although I agree with the majority result and reasoning, it is my opinion that the decision should consider and explain the effect of the United States Supreme Court's interpretation of the First Amendment as set forth in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). Initially, it may appear that the majority holding herein is in conflict with the Gertz ruling that in defamation cases, *1287 the states must apply a standard requiring more proof on plaintiff's part than strict liability.
It is my opinion, however, that Gertz is inapplicable to the case at bar because the Supreme Court indicated that the protection afforded by Gertz extends only to news media defendants. For a most comprehensive, scholarly treatment of all aspects of Gertz, see Robertson, Defamation and the First Amendment: In Praise of Gertz v. Robert Welch, Inc., 54 Tex.L.Rev. 199 (1976).
I respectfully concur.