453 So.2d 1272 (1984)
Gerard H. WATTIGNY, Plaintiff-Respondent,
v.
William H. LAMBERT, Defendant-Relator.
No. 84-301.
Court of Appeal of Louisiana, Third Circuit.
July 25, 1984.
*1273 Armentor & Waggigny, Gerard H. Wattigny, New Iberia, for plaintiff-respondent.
*1274 Allen, Gooch & Bourgeois, Clay Allen, Lafayette, for defendant-relator.
Before GUIDRY, CUTRER and STOKER, JJ.
GUIDRY, Judge.
In New York Times Company v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the United States Supreme Court held that the First Amendment to the U.S. Constitution limits the right of a public official to recover damages for defamatory falsehoods relating to his official conduct. In order to recover such damages, a public official must prove that the statement was made with "actual malice", that is, with knowledge that the statement was false or with reckless disregard of whether it was false or not.
At issue in the instant case is whether the foregoing rule is applicable when a public official is defamed by a nonmedia defendant.
The plaintiff, Gerard H. Wattigny, is the former sheriff of Iberia Parish, an office he held when the alleged defamation occurred. He filed the instant suit against the defendant seeking damages for defamation, or in the alternative, malicious prosecution. The defendant filed two separate motions for summary judgment together with accompanying documents in support thereof seeking dismissal of plaintiff's defamation action. The defendant asserts that the supporting documents establish that the alleged defamatory statements were made without actual malice, and that consequently the plaintiff, a public official, is precluded from recovery.
The trial court denied the defendant's motions for summary judgment. We granted the defendant's writ application to consider the following issues:
(1) Is the defendant, Lambert, entitled to the protection of the New York Times v. Sullivan standard?
(2) Does the record reflect an issue of material fact with regard to the determination of the existence of "actual malice"?

FACTS
The alleged defamatory material appears in a petition prepared by the defendant, an attorney, on behalf of one of his clients, William Jamall Jacob, Jr. Jacob retained the defendant on February 26, 1976, to pursue civil proceedings on his behalf seeking damages for false arrest and wrongful imprisonment. Jacob and his wife had been arrested on February 28, 1975 for criminal trespass, and thereafter placed in the Iberia Parish jail. On March 3, 1975, bond on each was set at $5,000.00. They were thereafter released on their own recognizance.
Lambert filed suit on behalf of Jacob, seeking damages for false arrest and wrongful imprisonment. Made defendants were the plaintiff herein, Gerard H. Wattigny, Jacob's father, William (Willie) Jacob, Sr., Jacob's brother, Tommy Jacob, and the plaintiff's son, Gerard B. Wattigny, an attorney practicing in New Iberia. On November 8, 1977, that suit was terminated in favor of Gerard H. Wattigny by the granting of summary judgment.
The plaintiff's son, Gerard B. Wattigny, filed a separate defamation suit against Lambert. That suit culminated in our opinion in Wattigny v. Lambert, 408 So.2d 1126 (La.App.3rd Cir.1981), writ denied, 410 So.2d 760 (La.1981); cert. denied, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1349 (1982).
In the instant case, the plaintiff contends that two statements contained in the petition filed in the aforementioned suit prepared by Lambert are defamatory of his character and reputation. The first is the caption of the petition, which reads "Petition for Damages for Illegal Arrest and Wrongful Imprisonment". The second statement alleged to be defamatory is contained in Paragraph 4 of the petition. It states:
"Petitioner was wrongfully imprisoned and detained in said jail at an exorbitant bail figure, set and obtained at the instance of defendants, until Monday, March 3, 1975."
*1275 The record establishes that the arrest of William Jamall Jacob was in fact lawful. Prior to his arrest, a complaint was lodged with the Iberia Parish Sheriff's Office concerning Jacob. In particular, the Sheriff's Office learned that Jacob had been operating an establishment known as the "Golden Wheel Night Club" in violation of a court sequestration order. A warrant for Jacob's arrest was thereafter properly issued and executed, resulting in Jacob's arrest on February 28, 1975. The record also establishes that the plaintiff herein, Gerard H. Wattigny, in no way influenced the district court judge in setting bail for Jacob. Thus, the record makes clear that both of the statements appearing in the petition prepared by Lambert which are complained of by the plaintiff are false.
Although the record clearly shows that the complained of statements are false, we entertain serious doubt that they are defamatory of the plaintiff. The caption makes no factual allegation concerning the plaintiff. Apparently, the plaintiff considers the caption defamatory because it identifies the action as one claiming damages for illegal arrest and wrongful imprisonment, and that because the plaintiff herein is named as a defendant in the petition, the caption accuses the plaintiff of participating in the alleged wrongful conduct. We do not agree. The petition in question names other persons as defendants, and makes specific factual allegations in the body of the petition accusing them by name of causing the false arrest and imprisonment of him and his wife. The plaintiff points to no allegations of the petition which accuse him of such conduct. Of the alleged defamatory material, Paragraph 4 contains the only statement which can be construed as referring to the plaintiff herein. It states that bail for Jacob was fixed at an exhorbitant figure "set and obtained at the instance of defendants." Since Gerard H. Wattigny was a defendant, this statement may be read as meaning that he, along with the other defendants, in some way caused bail to be set at an exorbitant figure.
We question whether the foregoing statement is defamatory.[1] However, the record before us does not contain the entirety of the petition prepared by the defendant. Rather, it only contains the caption of the petition and two of the paragraphs appearing therein. Because we do not know the full context in which the statements were made, we hesitate to reach a firm conclusion as to whether the statements were defamatory or not. In any event, we need not decide the question, as we find, for reasons set out in particular below, that the plaintiff is not entitled to recover damages for defamation.

THE NEW YORK TIMES STANDARD
The first issue we address is whether the standard established in New York Times Company v. Sullivan, supra, is applicable when a public figure is defamed by a non-media defendant. The defendant's motion for summary judgment is based on the plaintiff's alleged inability to prove "actual malice" as defined by New York Times and its progeny. The plaintiff strongly urges that the New York Times standard is not available to non-media defendants, and that no showing of actual malice is necessary.
For the reasons which follow, we conclude that the New York Times standard has equal application whether the defendant is a member of the media or not, and that the plaintiff, a public official, must prove actual malice in order to prevail.
*1276 The text of the Supreme Court's decision in New York Times makes no distinction between the First Amendment guarantees of freedom of speech and of the press. The first paragraph of the opinion reads:
"We are required in this case to determine for the first time the extent to which the constitutional protections for speech and press limit a State's power to award damages in a libel action brought by a public official against critics of his official conduct."
Further, the court specifically pointed out that the decision was grounded on the First Amendment freedoms of speech and press.[2] See footnote 4, 84 S.Ct. at 717.
In requiring a higher standard of proof by public officials in defamation actions, the Supreme Court decision in New York Times clearly places the First Amendment guarantees of freedom of speech and of the press on an equal footing. Absent some subsequent modification by the court limiting the privilege to media defendants, New York Times dictates that the standard therein created applies to non-media defendants based on the First Amendment guarantee of freedom of speech.
We find that the standard established in the New York Times case has never been limited to media defendants. The plaintiff urges that such a limitation was established in Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). There is no merit to this contention.
The court in Gertz held that the New York Times standard does not apply to a "publisher or broadcaster" of defamatory falsehoods about a person who is neither a public official nor a public figure. In reaching this conclusion, the court balanced the state interest in compensating private individuals for injury to reputation with the interest in an uninhibited media. Throughout the opinion, the court refers to the New York Times standard as a recognition of the constitutional protection in favor of the news media.
While the court in Gertz refers only to freedom of the press without referring to freedom of speech, the opinion does not hold that the New York Times standard is inapplicable to nonmedia defendants. That question was not before the court because the court concluded that the plaintiff therein was neither a public official nor a public figure. Hence, the New York Times standard was not applicable. Even had the court addressed the issue directly, any statements made in reference thereto would have been dicta. We find that neither Gertz nor any other subsequent case decided by the United States Supreme Court has limited the scope of New York Times, and that the constitutional privilege defined therein applies equally to non-media defendants.
We agree with the reasoning of the court in Davis v. Schuchat, 510 F.2d 731 (D.C.Cir.1975), where it stated:
"Our understanding of New York Times and its offspring is that private persons and the press are equally protected by the requirement that false comment about public figures must be knowing or in reckless disregard of the truth in order to be actionable. It seems to us a necessary corollary that comment about public figures should be equally protected whether made in mass media or in private. This is required both by the First Amendment, which speaks equally of freedom of speech and of the press, and by common sense, for if the "press" *1277 were given more protection than "private speech," persons would be encouraged to rush allegations into wide publication rather than to carefully present them to informed parties for verification or refutation in a more private setting."
In accord, Avins v. White, 627 F.2d 637 (3rd Cir.1980); Bussie v. Larson, 501 F.Supp. 1107 (1980).
In Avins v. White, supra, the court stated:
"Nor does the narrow audience in which the alleged defamatory statement was published persuade us that the New York Times privilege should not be extended to a person in White's position. Indeed with a narrow audience, the possibility of injury from an untruthful statement may be significantly less. More fundamentally, however, we believe that non-extension of the New York Times privilege to provide individuals like White creates a dangerous disequilibrium between the first amendment's guarantees of freedom of speech and the press."
We find the foregoing authorities persuasive. In our view, they reflect a proper interpretation of New York Times and its progeny. Therefore, we conclude that the plaintiff herein, who was admittedly a public official at the time the alleged defamation occurred, must prove "actual malice" in order to prevail.

SUMMARY JUDGMENT
Having determined that the plaintiff must prove "actual malice", we next consider the merits of the defendant's motion for summary judgment. A motion for summary judgment should be granted if the pleadings, answers to interrogatories, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. Art. 966; Thornhill v. Black, Sivalls & Bryson, Inc., 394 So.2d 1189 (La.1981). Oral testimony should neither be received nor considered, even with the consent of counsel, to decide a motion for summary judgment. Urban Management Corp. v. Burns, 427 So.2d 1310 (La.App. 2d Cir.1983); Hemphill v. Strain, 341 So.2d 1186 (La.App. 1st Cir. 1976), writ denied, 343 So.2d 1072 (La. 1977).
In the instant case, the defendant filed two motions for summary judgment. The first motion was filed on November 2,1983, along with the deposition of the defendant, William H. Lambert, and the minutes of the Sixteenth Judicial District Court from March 3, 1975, the date on which bond was set for William Jamall Jacob, Jr. The second motion for summary judgment was filed by the defendant on November 23, 1983. In support of the second motion, the defendant filed a copy of the transcript of testimony taken in the case of Gerard B. Wattigny v. William H. Lambert, supra, Docket No. 40440 of the Sixteenth Judicial District Court.
The record reflects that the trial judge did not consider the transcript of evidence taken in the suit above referred to in formulating his decision on the motion for summary judgment, as he determined that such evidence was inadmissible. We discern no error in this ruling, it being well established that in order for testimony taken at an earlier judicial proceeding to be admissible as evidence in a subsequent proceeding, there must exist an identity of parties, an identity of issues, and an opportunity for full cross-examination. Bulk Transport, Inc. v. Louisiana Public Service Commission, 252 La. 9, 209 So.2d 4 (1968). In the instant case, the parties are not the same and the plaintiff in this proceeding had no opportunity for cross-examination in the earlier suit. Therefore, we, like the trial court, consider the defendant's motion without reference to the transcript of evidence taken in the earlier suit between defendant and Gerard B. Wattigny.
The basis of the defendant's motion for summary judgment is that the pleadings, answers to interrogatories, depositions, and affidavits filed in the record show that there is no genuine issue of fact concerning "actual malice". In particular, the defendant urges that the record clearly shows his *1278 freedom of "actual malice" as defined by New York Times Company v. Sullivan, supra, and its progeny.
Actual malice is defined as knowledge that the statement is false or with reckless disregard for whether it is false or not. New York Times Company v. Sullivan, supra; St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). The following excerpt from the Supreme Court's opinion in St. Amant v. Thompson, supra, sheds light on the proof required to establish actual malice.
"For purposes of this case we accept the determinations of the Louisiana courts that the material published by St. Amant charged Thompson with criminal conduct, that the charge was false, and that Thompson was a public official2 and so had the burden of proving that the false statements about Thompson were made with actual malice as defined in New York Times Co. v. Sullivan and later cases. We cannot, however, agree with either the Supreme Court of Louisiana or the trial court that Thompson sustained this burden.
Purporting to apply the New York Times malice standard, the Louisiana Supreme Court ruled that St. Amant had broadcast false information about Thompson recklessly, though not knowingly. Several reasons were given for this conclusion. St. Amant had no personal knowledge of Thompson's activities; he relied solely on Albin's affidavit although the record was silent as to Albin's reputation for veracity; he failed to verify the information with those in the union office who might have known the facts; he gave no consideration to whether or not the statements defamed Thompson and went ahead heedless of the consequences; and he mistakenly believed he had no responsibility for the broadcast because he was merely quoting Albin's words.
These considerations fall short of proving St. Amant's reckless disregard for the accuracy of his statements about Thompson....
... reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the trust of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice."
In Garrison v. State of Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), the court stated that in order to show actual malice, a public official must show that the false statements were made with a "high degree of awareness of their probable falsity"; in accord, Gertz v. Robert Welch, Inc., supra.
When the New York Times v. Sullivan standard is applicable to a case, the trial court must apply it in assessing the evidence on a motion for summary judgment. In order to defeat the defendant's motion for summary judgment, the plaintiff must show that a judge or jury could reasonably conclude by clear and convincing evidence that the false statements were made with knowing or reckless falsity. Mashburn v. Collin, 355 So.2d 879 (La. 1977). See also Rochon v. Wolter et al, 427 So.2d 495 (La.App. 4th Cir.1983), writ denied, 430 So.2d 70 (La.1983).
Summarizing the foregoing jurisprudence, the plaintiff in the instant case (admittedly a public official), in order to defeat the defendant's motion for summary judgment, must show that a judge or jury could reasonably conclude, by clear and convincing evidence, that when Lambert prepared the petition in question, he either entertained serious doubt as to the truth of the statements made therein, or had a high degree of awareness of their probable falsity.
In support of the motion for summary judgment, the defendant filed his own deposition, taken on October 3, 1978, and the minutes of the March 3, 1975 bond hearing *1279 for William Jamall Jacob, Jr.[3] In opposition to the motion for summary judgment, the plaintiff filed several affidavits.
The defendant's deposition establishes the following uncontradicted facts. On February 26, 1976, William Jamall Jacob, Jr. retained the defendant to pursue a civil suit against several parties. As Jacob related the story to Lambert, his father and brother conspired with Gerard B. Wattigny to have him arrested by Iberia Parish Sheriff's deputies. Following this initial consultation, Lambert went to New Iberia in order to verify information given to him by Jacob. Lambert examined the Criminal Minute Book and found that on March 3, 1975, Jacob and his wife appeared in court, where bond on each was set at $5,000.00. Lambert also learned that Jacob and his father were involved in two civil suits. Jacob brought one of the suits against his father to dissolve a partnership. The father brought the other suit against Jacob for past due rent and for cancellation of a lease.
In addition to checking the public records, Lambert contacted Jacob's former attorney, Henry Bernard, Jr., to discuss Jacob's claim. According to Lambert, Bernard told him that the potential suit had merit. Lambert thereafter prepared the petition for illegal arrest and wrongful imprisonment. Lambert stated that every factual allegation contained in the petition was related to him by Jacob.
In opposition to the motion for summary judgment, the plaintiff introduced affidavits from the plaintiff, Gerard H. Wattigny, the plaintiff's son, Gerard B. Wattigny, William (Willie) Jacob, Sr., Tommy Jacob, and several employees of the Iberia Parish Sheriff's Department. These affidavits establish that a writ of sequestration had been properly issued on the building housing the "Golden Wheel Night Club" and the movables contained therein. The building was padlocked by Sheriff's deputies and notice of sequestration was served on William Jamall Jacob, Jr. The affidavits further establish that William Jamall Jacob, Jr. thereafter entered and began operating the night club in violation of the court order. A warrant for Jacob's arrest was properly issued and executed on February 28, 1975. Finally, the affidavits establish that the plaintiff herein did not in any way influence the district judge in the setting of Jacob's bond.
The affidavits filed by plaintiff clearly establish that the statements complained of are false. However, they shed no light on the crucial issue herein, i.e., the state of mind of the defendant Lambert at the time he drafted the petition in question, and more specifically, whether Lambert in fact entertained serious doubt as to the truth of the statements contained in the petition. The affidavits also establish that had Lambert contacted the proper authorities within the Sheriff's Department, he would have discovered that the arrest of Jacob and his wife was in fact legal. A reasonably prudent man may have conducted such an investigation. However, it is clear that "reckless disregard" for truth or falsity is not measured by a negligence standard, and is not established merely by showing a failure to conduct a reasonable investigation. St. Amant v. Thompson, supra.
We conclude that the pleadings, answers to interrogatories, depositions, and affidavits on file fail to establish an issue of material fact with regard to the question of "actual malice". The plaintiff has failed to establish that the defendant was aware of the probable falsity of the statements. Further, the statements are not "so inherently improbable that only a reckless man would have put them into circulation". St. Amant v. Thompson, supra. We therefore conclude that the trial court erred in denying *1280 the defendant's motion for summary judgment.
For the above and foregoing reasons, the writ heretofore granted is made peremptory, and the judgment of the trial court denying the defendant's motion for summary judgment is reversed. Accordingly, this matter is remanded to the trial judge for entry of summary judgment in favor of defendant dismissing plaintiff's suit for defamation, reserving to plaintiff his right to proceed after remand on his alternative claim for malicious prosecution.
REVERSED AND REMANDED.
NOTES
[1] We observe that in Wattigny v. Lambert, 408 So.2d at 1132, this court found that the statement in Paragraph 4 was defamatory of the plaintiff in that case, Gerard B. Wattigny. It should be noted that Gerard B. Wattigny was also accused in the petition of participating in the alleged illegal arrest and wrongful imprisonment. Under those circumstances, a statement falsely accusing him of causing an exhorbitant bail figure to be set (while knowing that the arrest was illegal) is certainly defamatory. However, the record before us fails to show that the petition accused Gerard H. Wattigny of any participation in, or knowledge of, the alleged illegal arrest. Hence, the statement that Gerard H. Wattigny caused an exhorbitant bail figure to be set, standing alone, may not be defamatory.
[2] The references to freedom of speech were necessary because the Supreme Court's ultimate holding operated not only in favor of the New York Times, but equally in favor of four individual defendants who were not members of the news media. The only apparent distinction between the stance of the individual defendants in New York Times and the defendant herein is that, in the instant case, the defendant did not publish the defamatory statements in the media. We regard this distinction as unimportant. Our reading of New York Times leads us to conclude that, insofar as the individual defendants were concerned, the holding was based on freedom of speech grounds. To be entitled to assert the privilege, a defendant need not have published the offending statements in the news media, as an infringement of free speech concerning public officials is sufficient to trigger the operation of the privilege.
[3] As was explained, supra, the trial transcript of the case of Gerard B. Wattigny v. William H. Lambert, supra, Docket No. 40440 of the Sixteenth Judicial District Court, filed in support of the defendant's second motion for summary judgment, is inadmissible and not considered. We therefore treat the two motions as a single motion, supported by the admissible documents noted above.