468 So.2d 764 (1985)
WHC, INC.
v.
TRI-STATE ROAD BORING, INC., et al.
No. 84 CA 0131.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
*765 William W. Stagg and Mark C. Andrus, Lafayette, for plaintiff-appellee WHC, Inc.
Robert H. Wood, New Orleans, for third party defendant-appellee Exxon Pipeline Co. and Exxon Corp.
S. Alfred Adams, Baton Rouge, for defendant-appellant Tri-State Road Boring, Inc.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Tri-State Road Boring, Inc. (Tri-State) filed a third party action against Exxon Corporation, U.S.A., and Exxon Pipeline Company (Exxon) and a reconventional demand against WHC, Inc. (WHC) in WHC's main demand against Tri-State and its surety, American Manufacturers Mutual Insurance Company (American), for damages for breach of contract. The trial court sustained Exxon's exception of no cause of action and ordered Tri-State to amend its complaint to allege specific acts constituting malice or defamation. Tri-State amended. The trial court sustained Exxon's second exception of no cause of action and dismissed Tri-State's third party action. Tri-State brings this appeal.

FACTS
WHC contracted with Exxon to construct a heating oil pipeline at Exxon's Maryland Terminal in East Baton Rouge Parish, Louisiana. WHC subcontracted with Tri-State for performance of pit excavation, welding, road boring and casing installation on the project. On March 16, 1982, shortly after Tri-State attempted to bore through the Louisiana Highway 19 road bed and the Associated Illinois Central Railroad track beds, it began experiencing a series of interruptions and equipment failures and breakdowns. WHC attributed these problems to Tri-State's improper and substandard boring work and use of inferior, inadequate equipment. Alleging "the complete inability of Tri-State to perform its contract in a timely and workmanlike manner," WHC dismissed Tri-State from the project on April 5, 1982, hired a new road boring contractor and sued Tri-State for breach of contract. Tri-State reconvened against WHC and filed a third party action against Exxon asserting a claim in tortious interference with contract, tortious interference with business and defamation of business reputation.
In granting Exxon's second exception of no cause of action, the trial court said, in part:
In addition, this Court has reviewed the supplemental and amending petition which was filed by Tri-State and finds it to be mere conclusions of law. There are no allegations of fact of any particular things that were done, any particular act on any particular date that influenced or caused the problem between WHC, Inc., and Tri-State. Even an allegation of certain derogatory statements isn't sufficient because a derogatory statement is not necessarily defamatory.

TRI-STATE'S SPECIFIC ALLEGATIONS
In its first petition, Tri-State alleged that "WHC, through its duly authorized employees and/or agents together with agents and/or employees of third party defendants, Exxon Pipeline Company and Exxon USA arbitrarily and capriciously dismissed Tri-State from the job precluding Tri-State from finishing all of the work that was to be done"; that WHC and Exxon "collectively caused Tri-State to be dismissed from this project without just cause and without any warning whatsoever"; that Exxon "interfered with the contractual and business relationship between Tri-State and WHC and caused WHC to order Tri-State from the job site; and that because of the illegal interference with the business relationship between Tri-State and WHC," Exxon has "damaged the business reputation of Tri-State with WHC and with other contractors on whom Tri-State relies to secure its business."
In its second petition, filed pursuant to the trial court's initial ruling, Tri-State accused Exxon employees of making derogatory *766 and "numerous false statements and protestations" to WHC-Dixie to the effect that Tri-State was not performing in a timely or workmanlike manner; that, prior to discharge by WHC, Exxon employees directly communicated a discharge order to a Tri-State employee; that other Exxon employees commented among themselves and to WHC-Dixie employees about the Exxon employee who "had exceeded the scope of his authority in ordering Tri-State off of the ... job;" that Exxon employees had actual knowledge they had no privity of contract with Tri-State and thus no authority to fire them; and that Exxon employees "proceeded to the physical work site to make sure that Tri-State removed its equipment and employees from Exxon's property."
Tri-State also alleged that this illegal interference with the business relationship damaged Tri-State's business reputation with WHC and others and that American Manufacturers Mutual Insurance Company refused to issue surety bonds to it after its removal from the Exxon work site.
Basically, Tri-State's initial and amending petitions make three allegations: (1) Exxon was involved in a concerted effort with WHC to arbitrarily, capriciously, and without just cause dismiss Tri-State, thus preventing its successful completion of the contract; (2) Exxon interfered with the contractual and business relationship between Tri-State and WHC by making derogatory and false statements about Tri-State's performance and exceeded its authority by going over WHC's head to fire Tri-State; and (3) Exxon damaged Tri-State's business reputation with WHC and other contractors on whom Tri-State relies to secure its business.
In addition, Exxon has filed in the record answers to Tri-State's interrogatories which admit that: "[i]t was generally known and believed" by both WHC and Exxon personnel that Tri-State "was not performing the work timely or in a satisfactory manner, did not appear to have reliable equipment and sufficient or trained personnel ..." and that an Exxon employee told its project engineer that he "should not have voiced his dissatisfaction with Tri-State's performance and activities in the presence of third parties other than WHC...."

NO CAUSE OF ACTION
The peremptory exception of no cause of action is used to question whether any legal remedy is available to the plaintiff under the allegations of the petition. Since no evidence may be introduced in its support, the exception is triable only upon the face of plaintiff's petition and any attached documents. LSA-C.C.P. art. 931. All well-pleaded facts are accepted as true, with any doubts resolved in favor of the sufficiency of the petition. The reviewing court must determine whether the law affords a remedy under the circumstances alleged, under any theory of the case. Sanborn v. Oceanic Contractors, Inc., 448 So.2d 91 (La.1984); Elliott v. Merritt, 457 So.2d 1216 (La.App. 1st Cir.1984); writ denied, 461 So.2d 315 (La.1984); Ustica Enterprises, Inc. v. Costello, 434 So.2d 137 (La.App. 5th Cir.1983).

DEFAMATION OF BUSINESS REPUTATION OR INJURIOUS FALSEHOOD
Although policy reasons prohibit damages for recovery from an indirect tort, interference with a contract,[1] recovery is possible for direct, intentional torts or breaches of either legal or contractual duties. "[T]here must be an ease of association between the rule of conduct, the risk of injury, and the loss sought to be recovered." PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058, 1061 (La.1984); Hill v. Lundin & Associates, Inc., 260 La. *767 542, 256 So.2d 620, 622 (1972); Sanborn, 448 So.2d at 94; Ledet v. Continental Grain Co., 380 So.2d 655, 657 (La.App. 4th Cir.1980).
Tri-State alleged that Exxon employees made derogatory and false statements about its untimely and unsatisfactory performance, and that these remarks damaged its business reputation. "In determining whether the petition states a cause of action, every reasonable interpretation must be afforded its language so as to maintain the sufficiency of the petition and to afford plaintiff his day in court." Adserv Corporation v. Lincecum, 385 So.2d 432, 434 (La.App. 1st Cir.1980); Hero Lands Company v. Texaco, Inc., 310 So.2d 93 (La. 1975).
If plaintiff's petition establishes the essential elements of defamation, then he may seek a remedy under that cause of action. These essential elements have traditionally been (1) defamatory words; (2) publication (communication to someone other than the person defamed); (3) falsity; (4) actual or implied malice; and (5) resulting injury Jenkins v. Ouachita Parish School Board, 459 So.2d 143, 146 (La.App. 2nd Cir.1984), writ denied, 462 So.2d 652 (La. 1985). The petition must also allege fault on the part of the defendant, but an allegation of falsity alone fails to satisfy this "fault" requirement. The United States Supreme Court has held that states should retain "a wide latitude in defining the standard of recovery for defamation" in First Amendment cases involving rights of freedom of speech and of the press of private individuals, but included a prohibition against using "liability without fault" as a standard of liability. Ritchey v. Azar, 383 So.2d 360, 364, n. 2 (La.1980);[2]Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).
Also rejecting the argument that Gertz could be distinguished from defamation actions involving private individuals and thus provide less constitutional protection to the defendant, the court in Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3rd Cir.1981), would hold a defendant liable only if a finding of fault is made. The Wattigny court used the traditional tort analysis, considering the essential elements of a defamation action to be fault, causation and damages, with LSA-C.C. art. 2315 according constitutional protection under Gertz, since plaintiff must prove fault on defendant's part to maintain the action. The Third Circuit held that the essential elements in an identical defamation action (two practicing attorneys, both private individuals) are the same as for any other offense or quasi-offense under LSA-C.C. art. 2315. Using the Hill v. Lundin & Associates duty-risk analysis, the court in Wattigny decided that a requirement of malice, either express or implied, is not a requirement under LSA-C.C. 2315, but could be taken into consideration in the award of damages or to destroy an otherwise valid privilege. Wattigny, 408 So.2d at 1133-34.
We disagree with the trial judge that the statements attributed to Exxon were merely derogatory, but not necessarily defamatory. Accepted as true, TriState's *768 allegations that Exxon employees made numerous false statements about their operating in an untimely, unworkmanlike manner are capable of a defamatory meaning, since they tend to injure Tri-State's reputation among those with whom it conducts business. If the alleged statements falsely provoked WHC's termination of the contract and prevented obtaining of bonding, damage occurred. Especially in the context of the Exxon engineer's alleged discharge of Tri-State and Exxon's alleged threat to terminate WHC's contract if it refused to fire Tri-State (which if true could show fault or even malice), these summaries of oral statements could be considered defamatory. The test is the effect the statements are "fairly calculated to produce and the impression [they] would naturally engender in the minds of the average persons among whom [they are] intended to circulate." Weatherall v. Department of Health and Resources, 432 So.2d 988, 993 (La.App. 1st Cir.1983), writ denied, 437 So.2d 1150 (La.1983).
Although the trial judge found that the allegations were not particular enough, vague allegations in Jenkins, 459 So.2d at 146, were found to be broad enough to require the admission of evidence on the elements of defamation. Also, Exxon has admitted, in answer to interrogatories that are a part of this record, that its project engineer should not have been critical of "Tri-State's performance and activities in the presence of third parties other than WHC ..." and that Tri-State "was not performing the work timely or in a satisfactory manner, did not appear to have reliable equipment and sufficient or trained personnel."
Accordingly, considering both the original and amending petitions, along with the judicial admission of record we find that a cause of action has been stated by Tri-State for defamation. In view of this finding, other issues raised by Tri-State in this appeal may be pretermitted. The trial court's decision dismissing Tri-State's third party action is reversed, and this matter is remanded for further proceedings consistent with the opinion. Costs of this appeal are taxed to Exxon.
REVERSED AND REMANDED.
SAVOIE, J., concurs in the result.
NOTES
[1] The Louisiana Supreme Court has not expanded the interpretation of LSA-C.C. art. 2315 to permit recovery for indirect economic damages caused by tortious interference with contractual relations. The general approach has been to dismiss the case for failing to state a cause of action for which legal relief can be granted. PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984); Moss v. Guarisco, 409 So.2d 323 (La.App. 1st Cir.1981); writ denied, 412 So.2d 540 (La.1982).
[2] Although the Louisiana Supreme Court used Gertz principles where private individuals were involved as plaintiff and defendants, some Louisiana courts have questioned the applicability of Gertz to defendants not associated with the news media. See Mashburn v. Collin, 355 So.2d 879, 885, n. 32 (La.1977); Wattigny v. Lambert, 408 So.2d 1126, 1130 n. 1 (La.App. 3rd Cir.1981), writ denied, 410 So.2d 760 (La.1981); cert. denied, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1349 (1982); and Rosen v. Reed, 351 So.2d 1284 (La.App. 1st Cir.1977), writ denied, 353 So.2d 1340 (La.1978), in Judge Landry's concurring opinion. Since the United States Supreme Court decided that the plaintiff in Hutchinson v. Proxmire, 443 U.S. 2675, 99 S.Ct. 2675, n. 16, 61 L.Ed.2d 411 (1979) was not a public figure, it did not raise that issue about New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) or its progeny. In Wattigny v. Lambert, 453 So.2d 1272 (La.App. 3rd Cir. 1984), involving a public figure (father of the plaintiff in the first Wattigny case), it was held that the New York Times standard has equal application whether the defendant is a member of the media or not, and the U.S. Supreme Court makes no distinction between freedom of speech and the press. Therefore, a public official must prove actual malice even by a private individual defendant.