671 So.2d 1062 (1996)
Leon LEWIS, Plaintiff-Appellant,
v.
Todd RODRIGUEZ, Louisiana Worker's Compensation Corporation, Defendants-Appellees.
No. 95-1035.
Court of Appeal of Louisiana, Third Circuit.
March 20, 1996.
*1063 Edward J. Cloos III, Metairie, for Leon Lewis.
Todd Rodriguez, pro se.
Donna B. Wood, Baton Rouge, for Louisiana Workers' Compensation Corp.
Before YELVERTON, THIBODEAUX, COOKS, WOODARD and AMY, JJ.
YELVERTON, Judge.
The issue in this case is whether the Louisiana Worker's Compensation Corporation (LWCC) is entitled to summary judgment holding that an insurance policy it issued to Todd Rodriguez Farm was not in effect on October 18, 1994, when Leon Lewis, an employee of Todd Rodriguez Farm, was injured on the job. The Administrative Hearing Officer held that, because LWCC had earlier taken the proper statutory steps to effectuate cancellation of the policy, it was not in effect on the date of the accident. At the summary judgment hearing, Todd Rodriguez contended that he made premium payments after the notice of cancellation, and that by accepting those payments and by other actions, LWCC had reinstated the policy with the result that it was in effect when the accident happened. On this appeal, reviewing the summary judgment record de novo, we find that we cannot rule out reinstatement as a matter of law. We are accordingly required to reverse the decision and remand the case for further proceedings.
Summary judgment is warranted only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the undisputed facts before the court. Any doubt must be resolved against the granting of summary judgment and in favor of a trial to resolve disputed facts. Chaisson v. Domingue, 372 So.2d 1225 (La.1979).
That there was a cancellation is not the issue. A cancellation notice was received by Todd Rodriguez Farm on September 15, 1994. The notice said the effective date of cancellation would be October 12, 1994. The issue is whether the policy was reinstated, as had happened so many times before, by the continued conduct of business as usual after the notice of cancellation.
After the notice of cancellation was mailed and received, Rodriguez made two premium payments. One payment, made in September, was credited to the premium due in August. The other, made in March 1995, was also credited to the account, but because it was insufficient to bring his policy current, the decision was made at that time to rely on the cancellation as of October 12, 1994. Because the summary judgment evidence reveals that LWCC had repeatedly cancelled and reinstated this policy, and because it is arguable that, contrary to the cancellation notice, the actual decision to cancel the policy (not to reinstate) was not made by LWCC until March 29, 1995, which was after the employee's accident occurred, we cannot say that as a matter of law LWCC is entitled *1064 to rely on its noticed cancellation before the accident.
The facts which raise this rather formidable doubt are found in the daily status journal. LWCC filed into the record a daily status journal covering the policy. The journal shows that policy No. 10177-1 was issued to Todd Rodriguez Farm with an effective date of 02/06/93. The journal ends with the last transaction entry of 04/15/95. According to the journal, in the first year and five months of policy coverage it was canceled five times and reinstated five times. During these five cancellations and reinstatements there was never any interruption of coverage. The first cancellation was only three months after the policy's inception date, and it was reinstated three months later. The next cancellation notice was sent in November 1993, and the policy was reinstated the next month. The third cancellation notice was sent when the policy was barely a year old. Reinstatement occurred a little over two months later. The fourth cancellation was in April 1994. That one was reinstated also. The fifth cancellation was in July 1994. After reinstatement for the fifth time, the sixth and latest cancellation was sent out in September 1994[1].
The daily status journal was simply filed into the record; no detailed explanation of its contents accompanied the filing. Todd Rodriguez is not represented in these proceedings, and in opposition to the motion for summary judgment he presented nothing except two canceled checks requested by the hearing officer. Rodriguez is not too well educatedhe wrote "worker composition" on one checkbut he could have reasonably interpreted LWCC's demonstrated willingness in the past to continue coverage upon payment of some premiums, to mean that his policy was safe if he continued to pay premiums. Judging from the daily status journal, it looks to us like that is what happened.
In any event, immediately following the notice of cancellation in September 1994, Rodriguez made a payment of $392. This check was accepted but it was applied not to the July arrears, for which the cancellation had occurred, but to the payment due in August. The daily status journal shows that a payment for $392 was posted on September 19, 1994.
After the ostensible cancellation date of October 12, 1994, the daily status journal shows nineteen further entries. One of these is an invoice dated November 17, 1994, for $317.43. The last invoice is dated January 16, 1995, for $335.98. There is an entry on March 31, 1995, showing payment of $335.98. This was five months after the accident. Accompanying the daily status journal was an affidavit executed by the underwriting manager for LWCC. The affidavit ended with the language:
... a search of the underwriting records reveal [sic] that subsequent to and as a result of the final audit, a payment of $335.98 was made and posted to his account on March 31, 1995. This amount was still insufficient to bring his workers' compensation policy current and the policy was duly canceled effective October 12, 1994. [Emphasis supplied.]
The date of this affidavit was June 12, 1995. The italicized language suggests that the final decision to cancel and not reinstate was made on March 29, 1995, to have retroactive application. It was on the very same date that the $335.98 payment was made that LWCC filed its motion for summary judgment in this case.
Much of the summary judgment evidence submitted in this case did not meet statutory and jurisprudential technical requirements. For example, Todd Rodriguez, who was present at the hearing representing himself, was called as a witness at the hearing and questioned by both the claimant and the insurer. This was improper. Oral testimony should *1065 not be received or considered in deciding a motion for summary judgment. Wattigny v. Lambert, 453 So.2d 1272 (La.App. 3 Cir. 1984), appeal after remand, 490 So.2d 1115 (La.App. 3 Cir.), writ denied, 493 So.2d 1221 (La.1986); Urban Management Corp. v. Burns, 427 So.2d 1310 (La.App. 2 Cir.1983). Although the hearing officer improperly considered Rodriguez' testimony in deciding the motion, this was harmless error because his testimony had little effect on the case.
Of more significance is the daily status journal, which plays a prominent part in our decision here. It was filed into the record after the hearing was over and after the record was technically closed, but the hearing officer let it become a part of the record. No party has objected to either the oral testimony or the daily status journal, nor has any party raised any issue concerning the propriety of the admission or consideration of any of this evidence. There is disagreement among the judges of this five-judge panel as to whether the daily status journal, in particular, is properly part of the record and can be considered by us in deciding de novo the motion for summary judgment. The majority of the panel has concluded that the journal can properly be considered because it is in the record, it was put there by the moving party, it was taken into consideration by the hearing officer, and no party has objected to it. Also, common sense and fair play dictate that we cannot just simply make it go away.
Perhaps the filings in this record which have created doubt and confusion in the minds of this court can one day be explained, and LWCC may yet be entitled to a favorable decision on the issue of coverage. On the basis of the record as it presently exists, however, we cannot do our duty to the requirements of the law and affirm this judgment. The summary judgment is reversed, at Louisiana Worker's Compensation Corporation's costs, and the matter is remanded to the Office of Worker's Compensation for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The stated reason for the latest cancellation was "noncompliance with payroll reporting." The parties apparently agree that what that really meant was failure to pay premiums. A $25 reinstatement fee was required. This amount appears on the daily status journal as a separate entry accompanying the reinstatement entry on each of the first five cancellations. No such fee is posted following the sixth cancellation. However, LWCC received payments following the sixth cancellation, and it could have deducted and applied the $25 reinstatement fee from any of those payments.