448 So.2d 91 (1984)
Raymond W. SANBORN
v.
OCEANIC CONTRACTORS, INC.
No. 83-C-0966.
Supreme Court of Louisiana.
February 27, 1984.
Byron J. Casey, III, New Orleans, for applicant.
Arthur A. Leonard, John Galloway, McGlinchey, Stafford, Mintz & Cellini, New Orleans, for respondent.
CALOGERO, Justice.[*]
Raymond W. Sanborn is before this Court on writs, from lower court judgments dismissing his lawsuit against his former employer, Oceanic Contractors, Inc. (Oceanic), on the latter's exception of no cause of action. He is seeking damages from Oceanic, claiming that eight months after his employment relationship with Oceanic had been terminated, Oceanic prevented him from working in the Middle East for another employer with whom he had contracted. Both lower courts found that plaintiff's petition and supplemental petitions did not allege facts upon which relief could be granted. This conclusion was based essentially on the finding that plaintiff had made no allegations that defendant either owed plaintiff a duty or breached any duty to plaintiff. Absent such allegations, the lower courts ruled that plaintiff had failed to state a cause of action, and consequently, that his suit should be dismissed.
For the reasons which follow, we affirm the finding that plaintiff's petition does not state a cause of action, but reverse the judgment insofar as it dismissed plaintiff's *92 lawsuit. We remand the case to the district court.
It is well settled that the exception of no cause of action must be decided upon the face of plaintiff's petition alone, and that all well-pleaded allegations of fact are to be considered as true. The reviewing court must determine whether the law affords a remedy under the circumstances alleged, under any theory of the case.
Plaintiff's original petition made the following contentions: "on or about June 2, 1977 Raymond W. Sanborn entered into an employment contract with Oceanic Contractors, Inc. for an indefinite period of time"; with that Oceanic employment contract, a "work visa" was secured for plaintiff to work in Dubai, in the United Arab Emirates; "on July 29, 1978 petitioner tendered his resignation to Oceanic Contractors, Inc." effective September 30, 1978; "on June 17, 1979 Raymond W. Sanborn entered into an employment contract with Scimitar Oils Limited, S.A."; "in order for petitioner to begin his employment with Scimitar" in Dubai "it was necessary for Oceanic Contractors, Inc. to release the `work visa' previously issued to plaintiff in the name of Oceanic Contractors, Inc., in order for a new visa to be issued to him"; Scimitar "attempted to have the `work visa' previously issued to petitioner released, in order that a new `work visa' could be issued to petitioner in the name of and sponsored by Scimitar Oils Limited, S.A."; "Oceanic Contractors, Inc. refused to release the said work visa"; "as a result of the refusal of Oceanic Contractors, Inc. to release the work visa issued to petitioner, said petitioner was unable to fulfill his employment agreement with Scimitar Oils Limited, S.A. as he was unable to have a work visa issued to him granting him permission to enter Dubai and work for said Scimitar Oils Limited S.A." He itemized his damages as "loss of work, $20,400.00."
In his first supplemental petition he contended additionally that "Oceanic Contractors, Inc. refused to release the said work visa" because "Oceanic Contractors did not desire to have Raymond W. Sanborn employed by Scimitar Oils"; he also said that he "contacted Oceanic Contractors in an attempt to have his work permit issued to him by Oceanic Contractors, Inc. cancelled so that he could begin employment with Scimitar Oils"; "all attempts made by plaintiff to have his work permit cancelled failed"; he stated further that "Scimitar Oils was advised by Oceanic Contractors that Mr. Sanborn's work permit was held by Oceanic Contractors and that they would not release said work permit and allow Mr. Sanborn to join Scimitar Oils even though Oceanic Contractors had terminated Mr. Sanborn's employment approximately 6 months prior to that time."
In his second supplemental and amending petition he added some additional paragraphs. He quoted "Rule 11 of the Immigration Laws of the United Arab Emirates, entitled Federal Rule No. (6) for the Year 1973 on the Matter of Immigration and Residency"; that rule provides essentially that the holder of a visa for employment for any person or organization "is prohibited from working for any other person or organization unless the written consent of that person or organization coupled with that of the Immigration and Naturalization Administration are given." He also added a paragraph in which he said that "Oceanic Contractors, Inc. intentionally and knowingly interfered with plaintiff's contractual relations with Scimitar Oils, by intentionally refusing to release plaintiff's work permit so that he could begin work for Scimitar Oils."
In response to these allegations, defendant filed an exception of no cause of action. The trial court sustained the exception and dismissed plaintiff's lawsuit.[1] The Court of Appeal affirmed the trial court action. Sanborn v. Oceanic, 430 So.2d 232 (La. App. 4th Cir.1983).
On plaintiff's application, we were prompted to grant writs, not because of his *93 contention that his petition and supplemental petitions stated a cause of action, but rather, because it appeared from the entire record (not just plaintiff's petition and supplemental petitions, which alone are to be considered in ruling on an exception of no cause of action) that a properly amended petition might do so.
In addition to plaintiff's petition and supplemental petitions, the record contains defendant's answers to plaintiff's pleadings, other pleadings by defendant, interrogatories and the answers thereto from both parties and the entirety of "Federal Rule No. (6) for the year 1973 on the Matter of Immigration and Residency" of the United Arab Emirates, as translated and offered by plaintiff.[2] From these different factual sources, the following information, apparently available for proper assertion in an amended petition, emerges.
Eight and one-half months after the September 1978 termination of Sanborn's employment with Oceanic, Sanborn entered an employment contract with Scimitar whereby he was to return to Dubai as Scimitar's employee at a Processing Plant being built for Scimitar by Oceanic. In order for Sanborn to reenter Dubai and work for Scimitar there, a work visa had to be secured from the United Arab Emirates. Scimitar was advised by Oceanic that Sanborn's work visa was still held by Oceanic and that they would not release it and allow Sanborn to join Scimitar, even though Oceanic had terminated Sanborn's employment six months before.
Sanborn had obtained a work visa in 1977, when he went to Dubai to work for Oceanic. The name of the sponsoring employer, Oceanic, was apparently duly entered on the visa.
Rule No. 16 of the Federal Rule No. (6) of the Immigration Laws of the United Arab Emirates, provides:
Every person who hires an alien has to present to the Administration of Naturalization and Immigration or Police Center in the District where the work is located, a resolution on the available forms within 48 hours from the time the alien reports to the job, and he has upon the termination of the services of the alien to present a resolution about that to the aforementioned administration or police center within 48 hours of the termination. (emphasis provided)
Notwithstanding Rule No. 16, Sanborn's work visa, with Oceanic listed as the sponsoring employer, was not cancelled or revoked when Sanborn left Oceanic's employ in September, 1978 (presumably because Oceanic did not process the appropriate forms within the 48 hour period after Sanborn's employment with Oceanic had been terminated).
Rule No. 11 of the Federal Rule No. (6) of the Immigration Laws of the United Arab Emirates, provides:
If the visa is for a visit, the alien is prohibited from working in any part of the country with or without pay, or as owner of a business.
And if the visa is for employment for any person or organization, the holder is prohibited from working for any other person or organization unless the written consent of that person or organization coupled with that of the Immigration and Naturalization Administration are given.
As a consequence, after plaintiff had entered into an employment contract with Scimitar in June of 1979 to return to and work in Dubai, defendant Oceanic, plaintiff's former employer, was contacted for its written consent. It was at that time that Oceanic refused to consent, notwithstanding that plaintiff's employment with Oceanic had terminated almost nine months earlier. Oceanic expressed the sentiment that it simply did not want Sanborn working for Scimitar.
As a result of this attitude on Oceanic's part, Sanborn was not able to obtain the necessary work visa to perform the services *94 he had agreed to perform for Scimitar. Plaintiff's suit seeks recovery of the $20,400.00 in wages he would have earned had Oceanic not prevented him from working for Scimitar in Dubai.
Considering the above information appearing in the record, along with plaintiff's petition and supplemental petitions, we conclude that notwithstanding that plaintiff has not heretofore done so, he is possibly, if not probably, able to state a cause of action in a properly amended petition.[3]
La.C.C.P. art. 934 provides:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition,. the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed. (emphasis provided)
The lower courts premised their decision to dismiss plaintiff's petition on the exception of no cause of action on the absence of a duty on Oceanic's part to release plaintiff so that he might work for another company: that is, to give their "written consent", as is made necessary by Rule 11, of the United Arab Emirates Immigration Laws.
However, it appears that in a properly amended petition plaintiff may be able to assert Oceanic's legal duty under Rule 16, requiring the processing of Sanborn's termination papers within 48 hours of the September 1978 employment termination. This legal duty, with the attendant consequence (had that duty been performed) that eight months later Sanborn would have been free of the requirement of Rule 11 (that he secure written consent of Oceanic), coupled with Louisiana's strong public policy against employment contracts requiring an employer on termination not to engage in a competing business as the employee of another,[4] may indeed support the duty on Oceanic's part which the lower courts found lacking in the allegations of plaintiff's petition.
Also, even if Oceanic had the right afforded by laws of the United Arab Emirates, not to consent to plaintiff's employment with Scimitar, the exercise of that right, without any benefit to Oceanic (and, of course, this latter requirement of absence of benefit would have to be proved) might constitute an actionable abuse of rights which would support an award of damages. Illinois Central Gulf Railroad Company v. International Harvester Company, 368 So.2d 1009 (La.1979); Morse v. J. Ray McDermott & Co., Inc., 344 So.2d 1353 (La.1977); Onorato v. Maestri, 173 La. 375, 137 So. 67 (1931); Higgins Oil & Fuel Co. v. Guaranty Oil Co., 145 La. 233, *95 82 So. 206 (1919); and Cueto-Rua, Abuse of Rights, 35 La.L.Rev. 965 (1975).[5]
In summary, plaintiff has not adequately asserted in his petition and supplemental petitions a legal duty to plaintiff on the part of Oceanic to support a cause of action. Yet, the record including interrogatories and answers thereto as well as the text of the Immigration Laws of the United Arab Emirates, coupled with Louisiana's strong public policy against noncompetition agreements (La.R.S. 23:921) suggests that he may be able to do so.
For the foregoing reasons the judgment of the district court and the Court of Appeal insofar as it sustained defendant's exception of no cause of action is affirmed; insofar as it finally dismissed plaintiff's petition it is reversed. Plaintiff is to be allowed thirty days from finality of this judgment within which to file another amending petition.

Decree
For the foregoing reasons, we affirm the lower court judgments insofar as they maintained defendant's exception of no cause of action, but reverse them insofar as they dismissed plaintiff's lawsuit. We remand the case to the district court to allow plaintiff thirty days from finality of this judgment within which to amend his petition.
AFFIRMED IN PART; REVERSED IN PART; REMANDED TO THE DISTRICT COURT.
LEMMON, J., concurs, agreeing with the majority's reasoning as to abuse of right, but tending to the view that the petitioners sufficiently stated a claim for intentional interference with contractual relations (although the claim may well be subject to a valid defense on summary judgment or on the merits). However, plaintiff may state the claim more completely by supplemental petition on remand.
NOTES
[*] Bailes, J. sitting for Justice Marcus.
[1] Defendant had earlier filed an exception of no cause of action which had also been maintained, and on that occasion plaintiff was given leave to amend his petition. La.C.C.P. art. 934.
[2] The United Arab Emirates Immigration laws were translated and, as such, introduced in evidence by plaintiff at the hearing on the exception of no cause of action. Defendant objected to plaintiff's translation of the provisions.
[3] Plaintiff has already amended his petition twice, once by leave of court after an exception of no cause of action had been sustained. And while we recognize that we are, perhaps, a bit generous to plaintiff's counsel allowing another amendment of the petition, in view of the strong policy which favors allowing litigants their day in court, we deem it preferable to allow another amendment rather than dismiss what may be a valid cause of action, simply because a litigant's attorney has not been able to state it properly in the petition.
[4] La.R.S. 23:921 provides:

No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract or employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years. (emphasis provided)
See also: Orkin Exterminating Company v. Foti, 302 So.2d 593 (La.1974) wherein the Court noted that the basis of the public policy against noncompetition agreements "is the right of individual freedom and of individuals to better themselves in our free-enterprise society, where liberty of the individuals is guaranteed."
[5] Plaintiff has argued in both lower courts that his petition and supplemental petitions state a cause of action for tortious interference with contracts. Such a cause of action has been rejected by this Court in Forcum-James v. Duke Transportation, 231 La. 953, 93 So.2d 228 (1957). See also Kline v. Eubanks, 109 La. 241, 33 So. 211 (1902). However, there have been recent expressions by some members of this Court that, in a case squarely presenting the issue, Forcum-James should be re-examined. Moss v. Guarisco, 412 So.2d 540 (La.1982) and Desormeaux v. Central Industries Company, Inc., 337 So.2d 225 (La.1976). As this case is presently before us, it does not present the issue (especially considering the state of the record) and an opinion on the subject at this time would be advisory at best. However, were plaintiff to allege and prove defendant intentionally and willfully interfered with plaintiff's contract with Scimitar, that such intentional interference was the proximate cause of the failure of the contract, and that defendant's actions were motivated by malice, or at least not by a significant interest of its own, he might well be entitled to relief.