**BATON ROUGE BUILDING AND CONSTRUCTION TRADES COUNCIL AFL–CIO, et al., Plaintiffs-Appellants,**

**v.**

**JACOBS CONSTRUCTORS, INC., et al., Defendants-Appellees.**

No. 86–3169.

United States Court of Appeals, Fifth Circuit.

Nov. 28, 1986.

■

---

Louis Robein, Gardner, Robein & Healey, Jerry L. Gardner, Jr., William Lurye, Metairie, La., for plaintiffs-appellants.

G. Michael Pharis, Baton Rouge, La., for Jacobs.

Gardner C. Courson, Atlanta, Ga., for UMC.

Lloyd H. Shenefelt, III, Deborah Brown Gentry, Baton Rouge, La., for Exxon Corp.

Before BROWN, RANDALL and HILL, Circuit Judges.

PER CURIAM:

The controversy in the instant case centers around the question whether non-signatory local unions can enforce the provisions of a collective bargaining agreement entitled the General Presidents' Project Maintenance Agreement by Contract, commonly referred to as the "orange book." An orange book is a standard form collective bargaining agreement entered into on a project-by-project basis between a maintenance contractor and the General Presidents' Committee on Contract Maintenance, a group of interested international unions. After a contractor's bid is accepted on a maintenance project, the contractor submits the details of the project and any requests for special provisions to the General Presidents' Committee. Sometimes the Committee asks the local unions for advice regarding the project, and sometimes the local unions contact the Committee to request that an orange book agreement as to a certain project not be granted. If the Committee is satisfied with the credentials of the contractor's client and the details of the project, the Committee will execute an orange book agreement for that project, granting or not granting any special provisions requested by the contractor.

The primary question raised on appeal is whether local unions, who have not signed an orange book agreement with the contractor, have a contractual relationship with the contractor sufficient to give them standing to sue for a violation of that agreement under section 301 of the Labor Management Relations Act, 29 U.S.C.

§ 185. A secondary question is also presented as to whether the local unions may bring a pendant suit for tortious interference with contractual relations under Louisiana law.

## I.

In April of 1985, the Baton Rouge Building and Construction Trades Council, composed of local unions representing crafts related to construction and maintenance, and twelve of its constituent members ("plaintiffs" or "local unions") brought suit against the defendants. Plaintiffs allege that a collective bargaining agreement, more specifically, an orange book agreement, existed between themselves and defendant Jacobs Constructors, Inc. ("Jacobs"). Plaintiffs further allege that Jacobs created an alter-ego, non-union entity, defendant UMC of Louisiana, Inc. ("UMC"), and that, at the urging of defendant Exxon Corporation, Inc. ("Exxon"), Jacobs transferred its maintenance work at the Exxon site to UMC, thereby violating the orange book agreement.

In November of 1985, defendants filed motions to dismiss the complaint and for summary judgment. Defendants argued that the local unions were not parties to the orange book agreement and therefore lacked standing to enforce the agreement under section 301. Defendants further argued that claims for tortious interference with contractual relations were not recognized by Louisiana law. In February of 1986, the district court dismissed plaintiffs' claims with prejudice, finding that plaintiffs lacked standing under section 301 and that no cause of action for tortious interference with contractual relations existed under Louisiana law.

On appeal, we find no genuine issue of material fact and affirm the judgment of the court below.

## II.

Since the parties presented depositions and documentary evidence in support of their briefs on the motion to dismiss the section 301 claim, we will review the district court's dismissal of that claim as a grant of summary judgment. *See Carpenter Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 500 (5th Cir.1982) (review dismissal as grant of summary judgment when district court went beyond pleadings to address the question). Our review of the section 301 standing issue presents the questions (1) whether there is any issue of material fact in dispute, and if not (2) whether the moving party is entitled to judgment as a matter of law. *Id.; Southmark Properties v. Charles House Corp.*, 742 F.2d 862, 873 (5th Cir.1984). In making this determination, we must review the evidence and any inferences to be drawn therefrom in the light most favorable to the non-moving party. *Id.*

Since no evidence was presented regarding the claim for tortious interference with contractual relations, we review the dismissal of this cause of action as a simple dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). In reviewing the dismissal of this claim, we may uphold the action of the trial court only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 104 S.Ct. 2229, 2233, 81 L.Ed.2d 59 (1984). With these standards of appellate review in mind, we turn to the substantive questions presented.

## III.

■ Section 301 of the Labor Management Relations Act reads in pertinent part as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "A section 301 claim must satisfy three requirements: (1) a claim of violation of (2) a contract (3) between an employer and a labor organization." *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 500 (5th Cir.1982). It is clear that "a section 301 suit may be brought for violation of a labor contract only against those who are parties to the contract at issue." *Id.* at 501; *see also Dixie Machine Welding & Metal Works, Inc. v. Marine Engineers Beneficial Ass'n*, 243 F.Supp. 489 (E.D.La.1965). None of the plaintiffs has signed the orange book agreement in question. Plaintiffs assert nonetheless that they are parties to the agreement because their respective international unions acted as their agents and signed the agreement on their behalf, and, alternatively, that the parties have modified the agreement to include the plaintiffs, as indicated by their behavior with respect to the local unions.

In support of their contention that the international unions made the local unions parties to the agreement, plaintiffs point to article 1, section 1 of the orange book, which reads as follows:

> This Agreement is for the joint use and benefit of the contracting parties, and the provisions herein defined and set forth shall be construed as binding upon and effective in determining *the relations between the parties and/or subordinate sub-divisions thereof signing hereto:* and to set forth herein, the basic Agreement covering the rates of pay, hours of work, and conditions of employment to be observed by the parties hereto.

(emphasis added). Plaintiffs argue that the inclusion of the clause "and/or subordinate sub-divisions thereof" demonstrated the international unions' intention to make the agreement effective with respect to local unions. Defendants, on the other hand, emphasize the words "signing hereto," which modify the entire clause. Since the local unions did not sign the contract, the contract is not, by its very terms, effective with respect to them.

After having carefully reviewed the "four corners" of the orange book, we conclude that the local unions were not included in the orange book agreement by article 1.

Plaintiffs argue that an interpretation of this clause as applying only to subordinate subdivisions that sign the agreement would render the clause redundant and almost meaningless, because "parties" and "signatories" are synonymous terms. We agree that these terms are, in general contract application, synonymous; however, we find that the parties included these otherwise "redundant" terms simply to emphasize that the only way to become a party was to sign the agreement. Plaintiffs' "non-signatory party" argument is undercut by the language of article 1's second paragraph, which provides for modification of the contract in writing by "the parties signatory hereto." This language from the second paragraph indicates that, contrary to the plaintiffs' assertions, the words "signing hereto" were not a result of the drafters' oversight.[1]

Moreover, the structure of the agreement and its negotiation in particular cases all point to administration at the national level. While the local unions may, as a practical matter, have some input with the Committee as to the granting of an orange book agreement, the contract negotiations are held exclusively at the national level

---

1. Indeed, in the case of a standard collective bargaining agreement like the orange book, the drafters' emphasis that "parties" included only those signatory is perfectly understandable. Page two of the orange book sets out a list of fourteen international unions, who are referred to throughout the agreement as "the Unions." Yet the drafters clearly wanted to anticipate the event of a particular international union not wanting to join a particular orange book agreement, as is demonstrated by the following language from page eighteen of the orange book: "It is understood that International Unions not desiring to sign this specific Agreement are not a party thereto...." Given the possibility of confusion between "Unions" for the purposes of the agreement and "parties" to the agreement, the drafters' careful emphasis that parties must be signatories is well taken.

between the contractor and the Committee of General Presidents. Article VI, section 6 provides: "The Administration and interpretation of this article as well as the entire General Presidents' Project Maintenance Agreement by Contract is the responsibility and sole prerogative of the General President's [sic] Committee on Contract Maintenance at the National level." Article I creates a bargaining unit composed of employees working under the orange book that is distinct from all other units, and further sets out that the agreement "may be modified by mutual consent in writing by the parties signatory hereto." Since, were local unions indeed party to the agreement, modification of the orange book's terms in particular cases would be of almost exclusive interest to them, the provision for modification at the national level—by "parties signatory"—is inconsistent with plaintiffs' "non-signatory party" theory.

Because we find as a matter of law that the orange book requires signature by a party for it to be effective with regard to that party, we do not reach plaintiffs' arguments that parol evidence demonstrates that the parties intended non-signatory local unions to be included in the agreement. We turn, instead, to the contention that the parties to the orange book have modified the agreement to include the local unions.

■ We note that, as previously discussed, the orange book requires that any modification be "by mutual consent in writing by the parties signatory hereto." No written evidence of mutual consent to modify the agreement by including local unions is suggested in the record, and it is with some skepticism that we turn to the assertion, implicit in plaintiffs' argument, that the parties have modified the writing requirement as well as have included non-signatory local unions in the agreement. We first note that there is no question of material fact as to whether the international unions and Jacobs specifically modified the Exxon project agreement; no evidence of even discussion between the international unions and Jacobs appears with respect to this particular orange book agreement.

Somewhat more difficult to dispose of is plaintiffs' claim that the decade-long course of dealings between Jacobs, the international unions and the local unions indicates a general modification of the orange book's terms to include the plaintiffs. Plaintiffs argue, in essence, that it is not a particular orange book agreement governing a discrete job site that has been modified, but rather the standard orange book agreement between Jacobs and the Committee whenever such an agreement is entered into in their jurisdiction.

We need not address the question whether, as a matter of law, one may modify the terms of a form agreement for the purposes of all dealings between signatories and local unions, because we find that the record in the instant case presents no genuine issue of material fact and that the course of dealings alleged is insufficient to demonstrate modification of the orange book. Plaintiffs point to their widespread involvement in administering the orange book agreements. Yet the overwhelming majority of this involvement is explicitly provided for by the orange book and therefore could not be probative of modification. Pursuant to the orange book, fringe benefit contributions are paid directly to local union pension, health, and welfare funds, working dues are deducted from employee paychecks and are forwarded to the local union, and local unions participate in the first step of the orange book's grievance procedure and in disputes over local wages.

Local union activity not covered by the orange book falls into the following categories: a local union's advising the international union of its opinion that a particular contractor's request for an orange book agreement ought not to be granted (2 times); a contractor's request for the local unions' opinions as to whether a certain job would be characterized as "maintenance" and therefore make the orange book applicable to the relevant employees (many times); a contractor's request for a contractual agreement with the local unions

that a certain job was maintenance, although it was clear to the unions that the job would not be so considered were it to be brought before the Committee of General Presidents (once); and a contractor's request with respect to a particular job that the local unions work as a normal schedule what would have been considered an overtime schedule under the orange book (once).

With one exception, however, none of these activities could be probative as to modification. The repeated requests for the local unions' opinion as to whether a job was "maintenance" or "construction" are in accord with the roles of the parties under the orange book. Since the local unions would have jurisdiction if the job were construction work, rendering the orange book inapplicable, it is natural for the contractor to check whether there might be a jurisdictional dispute with the other interested party before bringing the question to the Committee. The communication of the local unions' opinion that the Committee should not enter into a particular agreement with a contractor is not probative of modification because it lacks the element of consent of the contractor. The same is true with respect to the contractual agreement between the contractor and the local unions characterizing a particular job as "maintenance"; the agreement not to exercise their "construction" jurisdiction by the local unions did not involve the consent of the Committee.[2] The agreement with respect to overtime, however, is probative as to the mutual consent of the signatories because the Committee knew about and acceded to the contractor's agreement with the local unions. Whatever its probative value as to modification of the orange book agreement for that particular project, this isolated incident is far from sufficient to establish a general modification of the terms of the standard orange book agreement. We find as a matter of law that the course of dealings cited by plaintiffs is

insufficient to modify the agreement between the Committee and Jacobs with regard to the Exxon site.

Finding no contractual relationship between the plaintiffs and the defendants, we hold that plaintiffs have not satisfied section 301's requirements for standing to sue.

## IV.

Plaintiffs further argue that the existence of a cause of action for tortious interference with contractual relations under Louisiana law is uncertain, and that we should therefore certify the question to the Supreme Court of Louisiana. Plaintiffs argue that Louisiana precedent on this question is not clear, pointing to dicta in a recent Louisiana Supreme Court decision that indicates that the court might reconsider its position on this cause of action at some later date. *Sanborn v. Oceanic Contractors, Inc.*, 448 So.2d 91, 95 n. 5 (La. 1984) ("were plaintiff to allege and prove defendant intentionally and willfully interfered with plaintiff's contract ... he might well be entitled to relief."). Despite this suggestion that such a claim might later be accepted under Louisiana law, the *Sanborn* court did not overturn several decades of its precedent refusing to recognize such a cause of action. *See Tandy Brands, Inc. v. Harper*, 760 F.2d 648, 653 (5th Cir.1985); *Eximco, Inc. v. Trane Co.*, 737 F.2d 505, 511 (5th Cir.1984). Under these circumstances, we think it unlikely that the Supreme Court of Louisiana would accept certification on this issue at this time, and we decline the plaintiffs' invitation to certify.

## V.

The judgment of the district court is AFFIRMED.

---

**2.** Moreover, even if plaintiffs could show some knowledge of the arrangement on the part of the Committee, this incident, even viewed in connection with the overtime arrangement at

the other project, would be insufficient to establish the consistent course of dealings required for implicit modification of a form contract.