SAVOIE, Judge.
This is a tort suit. Plaintiffs, Karen H. Fugler and Roger Fugler, filed a petition naming as defendants Marvin Daigle, A.K. Durnin Chrysler-Plymouth, Inc. (A.K. Dur-nin), Colonial Penn Insurance Company, A.K. Durnin’s liability insurer, Dave Ether-idge and Darryl Edwards, employees of *16 A.K. Durnin. Defendants A.K. Durnin, Colonial Penn Insurance Company, Dave Etheridge and Darryl Edwards (the dealership defendants) filed a motion fqr summary judgment, a motion to strike and an exception of no cause of action. The trial court denied the motions and overruled the exception. We accepted an application for supervisory writs on behalf of the dealership defendants to consider the propriety of the trial court’s rulings.
It is well settled that an exception of no cause of action must be decided upon the face of the plaintiff’s petition alone, and that all well-pleaded allegations of fact are to be considered as true. The reviewing court must determine whether the law affords a remedy under the circumstances alleged, under any theory of the case. Sanborn v. Oceanic Contractors, Inc., 448 So.2d 91 (La.1984).
The relevant facts as set out in the petition are as follows. On January 14, 1987, Marvin Daigle purchased an automobile from the used car lot at A.K. Durnin. The car was sold to him by Darryl Edwards, with finalization of the sale and financing completed by the manager of the used car lot, Dave Etheridge.
Immediately after purchasing the vehicle, defendant, Mr. Daigle, was travelling westbound on Florida Boulevard, when suddenly he crossed the double lines and began travelling westbound in the inside eastbound lane of Florida Boulevard. Mr. Daigle’s vehicle struck an automobile driven by Karen Fugler head on. Mrs. Fugler was injured in the accident.
The Baton Rouge City Police issued three citations to Mr. Daigle; for failure to maintain control of vehicle, for no proof of insurance and for operating a vehicle while intoxicated. Mr. Daigle pled guilty to all three charges.
Plaintiffs alleged negligence on the part of Darryl Edwards and Dave Etheridge in paragraph thirteen of the petition, which reads:
13.
The accident, resulting losses, damages, and injuries were caused by the negligence of Darryl Edwards and Dave Etheridge, particularly, but not exclusively, for the following reasons:
a) Allowing an individual in an intoxicated condition to purchase an automobile;
b) Allowing an intoxicated individual to drive off of the lot at A.K. Durnin in a newly purchased automobile;
c) Allowing an individual to purchase an automobile and leave the lot at A.K. Durnin without insuring that that vehicle was covered by an insurance policy; and
d) Other acts of negligence which may be proven at trial on this matter.
A.K. Durnin Chrysler-Plymouth, Inc. and Colonial Penn Insurance Company were made defendants in the suit due to their relationship with Darryl Edwards and Dave Etheridge as employer and the employer’s liability insurer respectively.
The dealership defendants’ exception of no cause of action asserted that they have no duties relating to the complained of acts of negligence.
Specifically, they claim there is no duty imposed on an auto dealer to verify the sobriety of a person purchasing a vehicle and further that once a vehicle is sold they have no duty to prohibit an intoxicated person from driving off their premises. Additionally, they claim a seller has no duty to third persons to verify insurance prior to selling an automobile.
Herein, we must first determine whether there is any duty imposed on an auto dealer to verify the competency of a person purchasing a vehicle. This issue is not res nova in Louisiana. The Fourth Circuit addressed this issue in Perkins v. Desrochers, 359 So.2d 323 (La.App. 4th Cir.), writ denied, 362 So.2d 578 (La.1978). We quote the following language with approval:
The petition, after alleging facts constituting the negligence of Henry Des-rochers, asserts that Gentilly Dodge was negligent in selling a vehicle to the defendant driver without investigating *17 whether or not that individual possessed a driver’s license. In a supplemental and amending petition, plaintiff alleges: 1) that at the time of the sale Gentilly Dodge was informed that Desrochers did not possess a driver’s license; 2) that his driver’s license had been revoked several years prior to the accident because of traffic violations; 3) that he was grossly incompetent and unable to responsibly handle a vehicle; 4) that without investigating this driver’s history, Gentilly Dodge sold the automobile to him in disregard of the safety of the driving public; and 5) that the proximate cause of the accident was Gentilly Dodge’s negligence in selling a vehicle to a purchaser whom it should have known was incompetent and in failing to investigate or take any steps to determine whether the purchaser was capable of handling the vehicle.
In support of their contention on appeal that the petition states a cause of action against the automobile seller, plaintiffs rely heavily on a line of cases which place the duty on the owner of a lending or renting automobile to make a reasonable investigation to determine whether or not the borrower or renter is a competent driver.
We have no quarrel with this line of jurisprudence; however, we perceive a significant difference between the duty placed upon a rental agency or a lender of an automobile and the seller of a vehicle. Presumably, a person renting a vehicle is leasing for his own use and the car is still owned by the lessor. The lessor, therefore, has a vital interest in who will drive the rented automobile. Conversely, when a vehicle is sold, title passes at the act of sale and the seller has no further interest in the vehicle or its future drivers. An unlicensed purchaser may be buying the automobile for use by another person; or he may intend not to drive the vehicle until such time as he becomes licensed; or, conceivably, he may be purchasing for resale purposes only.
Indeed, if liability is placed on the seller, based on the allegations of the petition in the instant ease, a Pandora’s box of unanswered questions would be opened. For how long a period is the seller responsible for the actions of the purchaser? Would it be until he becomes licensed? Assume that the purchaser, subsequent to the purchase, is convicted of drunk driving or undergoes a personality change. Would we then say that had the seller made a more thorough investigation at the time of the sale these tendencies would have exhibited themselves? While the foregoing examples may be exaggerated, we think they serve the purpose of showing the untenable position of plaintiffs in seeking to assert a cause of action against the automobile dealer in the instant case.
As was stated in Toole v. Morris-Webb Motor Co., supra, [180 So. 431 (La.App.1938)] at page 432:
‘ * * * It is not the business of the seller of an automobile ... to inquire into the capacity of the purchaser to drive it any more than it is the obligation of the vendor of guns and ammunition to ascertain whether the purchaser is familiar with the use of the weapons. With this contention we quite agree.... ’ [Footnote omitted] 359 So.2d at 323, 324.
We perceive no significant difference in the fact that Perkins involved an unlicensed incompetent buyer and the instant case, in which the buyer was intoxicated. Accordingly, we find no duty is placed on the dealership in this situation.
The second issue facing us is whether a dealership has a duty, once a car is sold, to prohibit the intoxicated buyer from driving off their premises and injuring someone.
“It is well settled that there is no duty to control the actions of a third person and thereby prevent him from causing harm to another unless some special relationship exists to give rise to such a duty.” Smith v. Howard, 489 So.2d 1037, 1038 (La.App. 1st Cir.1986). Examples of the special relationship are those existing between the employer/employee, parent/child, and innkeeper/guest.
*18 We find no such special relationship between the dealership defendants and Marvin Daigle. The only relationship which the dealership defendants had with Mr. Daigle was a contractual one, in which they sold a used car to him for a specific price. The contract gave the dealership defendants no supervision or control over Mr. Daigle or his vehicle. Therefore, we find they owed no duty to prevent Mr. Daigle from driving his own car off their premises.
The last allegation of negligence made by the plaintiffs against the dealership defendants is that they had a duty to third persons to verify the buyer’s insurance prior to selling an automobile. The statute requiring a dealership to secure proof that a buyer, applying for registration of a motor vehicle is covered by insurance is LSA-R.S. 32:862. This statute also requires inspection stations to obtain a form from persons getting their vehicles inspected stating that they have liability coverage. The section of the statute relating to an inspection station’s duty was discussed in Abernathy v. Varnado, 409 So.2d 682 (La.App. 1st Cir.1981), writ denied, 412 So.2d 1120 (La.1982). There we found there is no statutory duty owed by an inspection station to keep uninsured motorists off the highway, and the inspection station’s only affirmative duty is to provide the forms affirming liability coverage. We find no distinction between Abernathy and the matter sub judice. As in the case with an inspection station, a dealership could be misled easily by a purchaser falsely filling out the liability form. Also the purchaser can let his coverage lapse. The purpose of any duty imposed on the dealership defendants is to obtain a form confirming liability coverage; this duty did not include within its scope the protection of third persons injured by the motorist. See Abernathy, 409 So.2d at 685.
For the above and foregoing reasons, the trial court is reversed and judgment is rendered maintaining the exception of no cause of action. The motion for summary judgment and motion to strike are now moot. The matter is remanded to the district court for further proceedings in accordance with the provisions of Article 934 of the Code of Civil Procedure. Costs of this appeal are to be borne by plaintiffs.
REVERSED AND REMANDED.