JOHNSON, Circuit Judge,
with whom POLITZ, Chief Judge, joins,
dissenting:
The majority opinion herein does not contest the panel majority’s principal conclusion. That conclusion was that there was a genuine issue of material fact as to whether the warnings on this product were inadequate because they did not warn of the danger that “nasal fatigue” could degrade an individual’s ability to detect the presence of the odorized gas. 952 F.2d 841, 850 (5th Cir.1992). Instead, the majority concludes that the evidence that the decedents were affected by nasal fatigue *1080 and that nasal fatigue bore a causal relation to the accident was too speculative to survive summary judgment. Maj. op. at 1071.
However, there was circumstantial evidence to support both of these conclusions.[1] That evidence showed that the decedents initially smelled the gas in that they discovered the leak. There was also testimony that nasal fatigue is a phenomenon that always occurs, at least to some extent, and that it works to diminish your ability to detect an odor. Additionally, there was evidence that Carter lit a cigarette some time after the leak was discovered which suggests that the decedents could no longer smell the gas.[2] From this circumstantial evidence, a jury could readily infer that the decedents’ inability to smell the gas, which was obviously present in sufficient quantities to cause the explosion, was caused, at least in part, by nasal fatigue.
Viewed in a light most favorable to the plaintiffs, this writer concludes that this view of the evidence was reasonable, not merely speculative, and for a jury to accept or reject. See Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir.1986) (per curiam) (in reviewing a summary judgment, we must review the evidence and any inferences to be drawn therefrom in a light most favorable to the non-moving party). If this view of the evidence is accepted, then it would be sufficient to raise a genuine issue of material fact as to whether the decedents did, in fact, experience nasal fatigue and whether this bore a causal relation to the accident. Fed. R.Civ.P. 56(c). For these reasons, and for the reasons stated in the panel majority opinion, this writer adheres to the view that summary judgment in this case was inappropriate.
Even if this conclusion is incorrect, though, it is difficult to see why this case merited en bane review. This case announces very little new law. Instead, it simply reiterates the familiar summary judgment standard flowing from the Supreme Court’s trilogy of summary judgment cases and then applies that standard to the facts of this case. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The only real difference between the majority and the dissent herein is the application of the facts of this particular ease to that familiar standard. This hardly seems worthy of en bane consideration.
For this additional reason as well, this writer dissents.

. Because direct evidence of the facts that underlie a strict liability claim is seldom available, Mississippi law has determined that circumstantial evidence of the allegations in a strict liability case is competent proof. BFGoodrich, Inc. v. Taylor, 509 So.2d 895, 903 (Miss.1987).

. The majority attacks the strength of the evidence supporting the view that Carter lit a cigarette in the tank and that this ignited the gas. The evidence shows, however, that Carter was a smoker, that he had purchased cigarettes and perhaps a lighter earlier that day and that there were smoked cigarette butts on the floor of the wingtank after the explosion. Moreover, as the problem with the welder had caused a break in the work, it is not unlikely that Carter would take advantage of that work stoppage to smoke a cigarette. Finally, there was testimony that there was no other ignition source in the tank which could have set off the explosion which led witnesses to conclude that Carter must have lit a cigarette. Surely, from this circumstantial evidence, a jury could reasonably conclude, and not just speculate, that Carter did, in fact, light a cigarette.