**Mary EVANS, Plaintiff**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 3:94–CV–236BN.**

United States District Court,
S.D. Mississippi,
Jackson Division.

April 17, 1995.

Crymes G. Pittman and C. Victor Welsh, III, Pittman, Germany, Roberts & Welsh, Jackson, MS, for plaintiff.

Lemuel Augustus Smith, III, U.S. Attorney's Office, Jackson, MS, for defendant.

*OPINION AND ORDER*

BARBOUR, Chief Judge.

Pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, Defendant United States of America brings its Motion to Dismiss or in the Alternative for Summary Judgment. The Court also has before it the Motion to Amend Complaint filed by Plaintiff Mary Evans.[1] Having considered these mo-

---

1. Since this Motion was filed, Plaintiff filed a motion with the United States Magistrate Judge seeking leave to amend her Complaint. Thus, Defendant has styled its reply brief as "Rebuttal Memorandum in Support of Motion to Dismiss or in the Alternative for Summary Judgment and in Opposition to Motion to Amend Complaint." The Magistrate Judge, concluding that there was

tions as well as the supporting and opposing memoranda, the Court rules that the Motion to Dismiss is granted and the Motion to Amend Complaint is moot.

## I. BACKGROUND

This case involves a wrongful death action brought by Plaintiff on behalf of herself and her son, Lee Evans, for the tragic death of Leslie Evans, their daughter and sister respectively. The action is brought against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680.

Jimmie Ray Evans, Plaintiff's former husband and the father of both Leslie and Lee Evans, was a veteran of the Vietnam War. On February 14, 1990, Jimmie Ray Evans murdered Leslie and then committed suicide. Prior to his death, Evans, who for some time had been experiencing serious emotional and psychological problems, had been admitted to the Veterans Administration Hospital in Jackson, Mississippi on numerous occasions. Jimmie Ray was also receiving psychiatric treatment at the VA Hospital on an outpatient basis. His psychiatrist at the VA Hospital was Dr. Vincent Liberto.

The allegations contained in both the original Complaint and the proposed Amended Complaint are essentially the same. In pertinent part, Plaintiff states that Dr. Liberto, was liable for the death of Leslie Evans due to his failure to provide adequate warning to Leslie Evans and to other members of the Evans family of Jimmie Ray's propensities to cause them harm, his failure to notify the police, and his failure to take reasonably necessary steps for the protection of Leslie Evans. Plaintiff predicates the liability of the United States on the theory that Dr. Liberto's failures entailed a breach of the standard of care required of practitioners in his position. Plaintiff alleges that at all relevant times, Dr. Liberto was acting within the course and scope of his employment as a VA psychiatrist.

## II. RULE 12(b)(6) STANDARD

For the purposes of a motion to dismiss under Rule 12(b)(6), all material allegations in Plaintiff's Complaint must be taken as true and construed in the light most favorable to Plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983). A Rule 12(b)(6) dismissal is not appropriate unless it appears to a certainty that Plaintiff would not be entitled to relief under any set of facts that could be proven. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Rule 12(b)(6) requires dismissal "only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegation." *Baton Rouge Bldg. & Constr. Trades Council v. Jacobs Constructors, Inc.,* 804 F.2d 879, 881 (5th Cir.1986) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

## III. DISCUSSION

In its motion, the United States contends that, under Mississippi law, Dr. Liberto was under no legal duty to warn any members of the Evans family of Jimmie Ray's homicidal propensities. Plaintiff disputes this contention in two ways. First, Plaintiff asserts that Dr. Liberto admitted in his deposition that he believed that his duties to the members of the Evans family were controlled by the standard of care articulated in the case of *Tarasoff v. Regents of the University of California,* 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334 (1976). It is this deposition testimony which provides the basis of Plaintiff's Motion to Amend Complaint in which Plaintiff seeks to amend her Complaint to reflect what she believes is the "broader scope" of the duty that Dr. Liberto owed the members of the Evans family in view of *Tarasoff.* Second, Plaintiff asserts that notwithstanding the existence of any *Tarasoff* duty, Dr. Liberto had assured Plaintiff that if at any time he felt that Jimmie Ray reached the point that he presented a danger to her or other

no opposition to the motion to amend since Defendant failed to file his response to that motion in the Magistrate Judge's chambers within the original motion deadline provided by the Local

Rules, originally granted the motion. Thereafter, the Magistrate Judge withdrew his order granting the motion and the matter was referred to the undersigned Judge for resolution.

members of the family, that he would warn her accordingly. Plaintiff argues that in so doing, he voluntarily assumed a duty which he was under an obligation to discharge in a non-negligent manner.

■ Under the Federal Tort Claims Act, "[w]hat constitutes a legal duty and when such a duty has been breached are questions to be settled in accordance with 'the law of the place where the act or omission occurred'." *Orr v. United States,* 486 F.2d 270, 274–75 (5th Cir.1973) (quoting 28 U.S.C. § 1346(b)). There is no dispute that the omission at issue in the present case occurred in Mississippi. Therefore, the Court will look to Mississippi law in deciding the issue of what legal duty Dr. Liberto owed the members of the Evans family. Dr. Liberto's subjective belief that the nature or scope of his duties were ruled by *Tarasoff* is therefore irrelevant its resolution.

■ In *Tarasoff,* the California Supreme Court articulated the duty of a psychotherapist who knows or should know that his client or patient presents a threat of harm to third parties:

> When a therapist determines, or pursuant to the standards of his profession should determine, that his patient presents serious danger of violence to another, he incurs an obligation to use reasonable care to protect the intended victim against such danger. The discharge of this duty may require the therapist to take one or more various steps, depending upon the nature of the case. Thus it may call for him to warn the intended victim or others likely to apprise the victim of the danger, to notify the police, or to take whatever other steps are reasonably necessary under the circumstances.

17 Cal.3d at 431, 131 Cal.Rptr. 14, 551 P.2d 334.

While *Tarasoff* may be the law in California, Plaintiff has cited no authority showing that this decision represents the law in Mississippi. Indeed, in *Burchfield v. United States,* 750 F.Supp. 1312 (S.D.Miss.1990), approximately nine months after the incident involved in this case occurred, Judge Russell stated:

> Both parties substantially agree that the central broad issue herein is what duty, if any, is owed to a third party by a psychiatric care provider with respect to the conduct of a patient. Additionally, the parties agree that Mississippi law is silent on the issue.

750 F.Supp. at 1317. Other than *Burchfield,* the court has found no other case from this jurisdiction, state or federal, addressing the issue. Nor has another case been cited to it.[2]

Consistent with its duty to apply "the law of the place where the act or omission occurred" in order to determine whether Defendant "would be liable" to Plaintiff, 28 U.S.C. § 1346(b), the Court must make a guess like those "*Erie*-guesses" it often is called upon to make in cases which come to it pursuant to its diversity jurisdiction, as to whether, under Mississippi law, Dr. Liberto owed the members of the Evans family a *Tarasoff*-like duty. As will be set forth more fully below, the Court determines that, at least insofar as the time at which the events at issue occurred, Dr. Liberto owed the members of the Evans family no such obligation.

Prior to April 15, 1991, Miss.Code Ann. § 41–21–97 (1972), which is included in that part of the Mississippi Code governing the care and treatment of mentally and mentally retarded persons, read:

> The hospital records of and information pertaining to patients at treatment facilities shall be confidential and shall be released only: (a) upon written authorization of the patient; (b) upon order of a court of competent jurisdiction; (c) when necessary for the continued treatment of a patient;

---

**2.** Although the Court in *Burchfield* found that the defendant owed no duty to the plaintiff, *Burchfield* provides no assistance in the resolution of this case because the issue there was different from the issue here. The issue in *Burchfield* was what duty a psychological care provider owed *unidentified* members of the public *to physically* restrain a patient who might be dangerous and who might present a harm to them should he escape. Here, the issue is what duty, in terms of *providing a warning,* a psychological care provider owes an *identified,* potential victim of violence whom the provider knows or has reason to know has been targeted by the patient for attack.

or (d) when, in the opinion of the director, release is necessary for the determination of eligibility for benefits, compliance with statutory reporting requirements, or other lawful purpose.

Miss.Code Ann. § 41–21–97 (1972) (1990 ed.).

In 1991, Miss.Code Ann. § 41–21–97 was amended. While still including the language from the old version, the section now reads in pertinent part:

The hospital records of and information pertaining to patients at treatment facilities *or patients being treated by physicians, psychologists or licenses master social workers shall be confidential and shall be released only ... (e) when the patient has communicated to the treating physician, psychologist or master social worker an actual threat of physical violence against a clearly identified or reasonably identifiable potential victim or victims, and then the treating physician, psychologist or master social worker may communicate the threat only to the potential victim or victims, a law enforcement agency, or the parent or guardian of a minor who is identified as a potential victim.*

Miss.Code Ann. § 41–21–97 (emphasis indicating newer language).

The old version of Miss.Code Ann. § 41–21–97 resolves the issue as to whether there was any duty on the part of Dr. Liberto to warn.[3] The statute was clear: information pertaining to patients at treatment facilities was considered confidential and therefore could only be lawfully released in those four specific circumstances set forth in subsections (a) through (d). Jimmie Ray qualified as a patient "at a treatment facility" since he was receiving his psychiatric treatment from the VA Hospital on an outpatient basis. Therefore, release of any information pertaining to him would have been unlawful absent one of the situations set forth in the old version of the statute. Danger to potential victims of physical violence was not one of those situations. While it is true that

subsection (d) of the old version made it permissible for information to be released for some "other lawful purpose," the fact remains that Plaintiff has cited no authority showing that it would have been lawful in Mississippi prior to 1991 to release or communicate confidential information related to Jimmie Ray's dangerous propensities to others, even in an attempt to protect their safety. Indeed, the fact that the state legislature felt the need to amend Miss.Code Ann. § 41–21–97 so as to make it explicit that such release would be legally permissible, shows that there were, at the very least, serious doubts in the minds of most legislators as to whether disclosing confidential information in such circumstances would have been considered lawful under the old version of the statute. Thus, the Court is of the opinion that as of April of 1991, no *Tarasoff*-like obligation would have been imposed by Mississippi law upon practitioners in Dr. Liberto's position.

■ Plaintiff's second argument for why the Motion to Dismiss or for why summary judgment should not be granted is that Dr. Liberto voluntarily assumed a duty to warn when he assured Mary Evans that he would let her know if and when Jimmie Ray's condition degenerated to the point that Dr. Liberto thought that Jimmie Ray might present a threat of harm to her or to any other members of her family. Plaintiff argues that once this duty was assumed, Dr. Liberto was under an obligation to discharge it in a non-negligent manner.

In *Long v. Patterson*, 198 Miss. 554, 22 So.2d 490 (1945), the survivors of a driver of a tractor brought suit against a defendant minor. The minor had been riding on the rear fender of a tractor that was not equipped with lights. The minor had assured the driver of that tractor that he would give him timely notice of all approaching traffic as together they rode the tractor out on to the open highway at night. The driver was killed when a cattle truck ran into the tractor. One of the issues upon which the

---

**3.** In the absence of some specific provision or rule to the contrary, the Court is of the opinion that the 1991 amendments to Miss.Code Ann. § 41–21–97 only apply prospectively. Thus, the

pre–1991 version of Miss.Code Ann. § 41–21–97 applies to this case since the incidents which give rise to this suit all occurred prior to the enactment of the amendments.

Mississippi Supreme Court opined was the question of whether the defendant minor owed the driver a duty to warn him of the approaching danger. On its way to answering the question, the Mississippi Supreme Court stated:

Is there a duty imposed by law upon any person to warn another of an approaching or impending danger to the latter, when the person sought to be charged had and has nothing to do with putting into operation, or with the continuance in operation of, the dangerous agency which approaches? Whatever we might think of this as a moral proposition, it is a question to which the settled law gives a negative answer. As stated in the Restatement, Vol. 2 Torts, Sec. 314, "the actor's realization that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action." And an illustration is given as follows: "A sees B, a blind man, about to step into the street in front of an approaching automobile. A could prevent B from doing so by a word or touch without delaying his own progress. A does not do so and B is run over and hurt. A is under no duty to prevent B from stepping into the street and is not liable to B." *But the rule is otherwise where the actor undertakes to render such service, although gratuitously, and the other person reasonably relies on the performance of the undertaking. 2 Rest.Torts, Sec. 325. There the liability arises out of the consent of the actor, express or implied, to be bound to the duty, but only by such consent.*

22 So.2d at 492 (emphasis added).

*Long* appears to support Plaintiff's second argument. Nevertheless, it is not dispositive. As the Court has already ruled, based upon the fact that the members of the Mississippi Legislature perceived the need to amend Miss.Code Ann. § 41–21–97 in order to make it lawful for a person in Dr. Liberto's situation to warn the Evans family members of Jimmie Ray's propensities, prior to April of 1991, this statute would have made it unlawful for Dr. Liberto to have done so. Thus, even if a situation existed in which Dr. Liberto assured Plaintiff that he would warn her and in which Plaintiff and/or the members of her family relied upon this assurance, a duty of care owed to a person cannot include a duty that is proscribed by some other law. Accordingly, Plaintiff's "assumed duty" argument also fails.

Finding that at the time that the events which form the basis of this suit occurred, Dr. Liberto was under no duty under Mississippi law to inform any members of the Evans family of Jimmie Ray's threats of violence or his dangerous propensities, the Court dismisses with prejudice Plaintiff's suit against the United States. The Court also dismisses the Motion to Amend Complaint as moot.

SO ORDERED.